WILLIAM BUCHANAN and others *v.* R. D. HOWARD and others.

April Term, 1876.

EXECUTED TRUST — PARTITION. — The testator having given his personal' property to his widow, with power to make advancements to his unmarried daughters to the value of the advancements made by him to his married daughters, and having devised his land to his widow for life, and then to his sons, the latter, shortly after the testator's death, by writing under seal, reciting that they were entitled under the will to a larger share of their father's estate than their sisters, conveyed to the latter such an interest in the land devised as might be necessary to make all the shares of the children equal, taking into consideration all prior advancements, and reserving the right to designate that part of the land to be allotted to the sisters in a body. *Held*, that the conveyance by the sons was an executed trust, and binding; that the intention was to secure equality among the children in the father's estate, and the advancements by the father by the will, and by the mother, should be taken into consideration; and that the shares of the daughters in the land should be set off in a body, as the surviving sons had directed.

*M. B. Howell*, for complainants.
*E. H. East*, for defendants.

THE CHANCELLOR : — This case has been set for hearing on bill and answer, and is, so far as the papers show, a friendly suit to secure a legal partition of real estate among the numerous parties in interest.

Thomas H. Everett, an old and respected citizen of this county, died in 1854, leaving a widow, four sons, and eleven daughters. By his will, he gave the residue of his personal estate, after the payment of debts, to his widow, with directions to advance to his unmarried daughters, as they should come of age or marry, property to the value of the advancements made by the testator in his lifetime to his married daughters. Any personalty at the wife's death was to be divided among the unmarried daughters. He also devised his home place, of over six hundred acres of land, to his wife for life, and, after her death, to his four sons, to be

equally divided between them. Shortly after their father's death, these sons, who were all of age, voluntarily executed an instrument in writing, under seal, by which, after reciting that they were entitled under their father's will to a larger share of his estate than their sisters, — naming them and the two children of a deceased sister, — and that they did not desire a larger portion of said estate than an equal share with all the children, they undertook, for the consideration of natural love and affection for their sisters, and the nominal sum of $5 paid to each of them, to convey, and did thereby convey, to their said sisters and nieces named, — the nieces taking the share of the mother, — "such an interest in the land devised to us by the last will and testament of the said Thomas H. Everett, deceased, as may be necessary to make all our shares in said estate equal, taking into consideration all prior advancements made in the lifetime of said Thomas H. Everett. The interests hereby conveyed are to be set off to said sisters and nieces jointly, in one body, and to be taken off the land devised to us as we may direct. But it is expressly understood that we retain the right, if we choose to exercise it, of paying to our said sisters and nieces, their guardians or husbands, at any time before said land is divided, so much money as may be necessary to equalize our shares in said estate, in which event this conveyance is to be void, and we are to retain all the land devised to us by said will, as fully as if this agreement had never been made." This instrument was duly acknowledged by the makers, and registered February 8, 1855.

The widow of the testator took possession of the property devised to her, and did advance the daughters as directed by the will. She died on May 7, 1875, and the residue of the personal property, valued at $1,202.16, was given, under the will, to the only remaining unmarried daughter, who received it to be accounted for in an equal division of the property under the conveyance of her brothers. One of

the sons had in the meantime died, leaving children, who are infants. ` The surviving sons, shortly after their mother's death, called upon three of the neighbors to divide the estate in accordance with their written agreement or conveyance. These neighbors had the land surveyed, and estimated its value. They found that nine of the daughters had each been advanced $400, either by the father, or the mother under the directions of the will, and that the unmarried daughter had received in the residue of the personalty $1,202.16 as aforesaid, also in conformity with the testator's will. By adding this latter sum and the aggregate of advancements to the valuation of the land, they ascertained the gross amount for division, and declared each child, or the representatives of a deceased child, entitled to one-fifteenth, less the advance as aforesaid in the case of those advanced. By now adding together the balances due the daughters, and the shares of the sons, they ascertained the share of each set of children in the land, according to the valuation they had put upon it. They then undertook to divide the land into two parts, of the values thus ascertained, and, at the request of the surviving sons, laid off the share of the daughters jointly on the north side of the tract, and the share of the sons on the south side, so as to include the old mansion-house. It was obvious, however, there being infants interested, that this partition, however equal and just, could not be carried out without the aid of this court.

On February 26, 1876, the daughters and their husbands, or the descendants of daughters, filed this bill against the surviving sons and the children of the deceased son for a partition of the land under the testator's will and the instrument of February 8, 1855. The defendants have answered, setting out the reference to the neighbors, and their action as aforesaid, and especially their ascertainment of the advancements with which the daughters should be charged, and insisting upon the division of the land made by them,

at any rate so far as it fixed, at the request of the surviving sons, the part of the tract to be set apart to the daughters, and that the allotment should be to them in one body.

The bill, by reciting the language of the instrument of February 8, 1855, literally, where it speaks of equalizing the shares by taking into consideration the advancements made in the lifetime of the father, seemed to imply that the advancements made by the mother, under the direction of the will, should not be taken into account. But this implication has been expressly disavowed by the learned counsel of the complainants, who concedes that his clients only seek equality after accounting for all advances received out of their father's estate, either during his life or under the provisions of his will. This fair and honorable concession renders it, perhaps, unnecessary to construe the language used in the conveyance in question. The object of that instrument is so clearly to produce equality of interest among all the children in the father's estate, and the advancements made by the mother under the direction of the will may so fairly be held to have been made by the father in his lifetime, by the execution of his will, that the court would have given to the language used the same construction voluntarily put upon it by the parties themselves.

In this view, and the advancements as found by the referees being conceded to be correct, both by setting the cause for hearing on bill and answers, and orally in argument, there is no real difference between the parties. The surviving sons are clearly entitled, under their conveyance, to direct the part of the land to be set off to the daughters, and to have the same set off to them jointly, — that is, in one body. The object of these provisions was to give the sons the choice of locality, and to disconnect them from the subsequent divisions of the sisters' shares between themselves. The instrument of February 8, 1855, does convey to the daughters the legal title to an undivided portion of the realty. After its execution, the legal title to the

land was in all the children, in trust for them and their descendants, in the proportions to be ascertained, upon the death of the widow, by taking an account of the advancements, and to have the same set apart in severalty in two parcels, according to the shares as ascertained, the shares of the daughters to be set off to them in a body, and from that part of the land which the sons may direct. The surviving sons, being a majority, had the right to give this direction, and have properly exercised it by directing the daughters' shares to be taken from the northern side of the tract.

I have no doubt that the allotment of the referees is as near an approximation to the shares of the two branches of the family as can be made. If the complainants, by their solicitors, are willing to adopt that allotment, they may do so without any additional cost, and titles may be divested and vested accordingly. If they prefer, however, to have a new allotment, they are legally entitled to it. In that event, commissioners will be appointed to make it, setting apart to the daughters their shares in a body from the north side of the tract, and as nearly in accordance with the division made by the referees as can well be under the new valuation, the former allotment being treated as a direction by the sons under the power reserved in the deed. In making the allotment, the same plan adopted by the referees will be pursued by the commissioners. That is to say, the commissioners will add the amount of the total advancements, $3,600, and the value of the residuary personalty given to the unmarried daughter, $1,202.16, to the value of the whole tract as ascertained by them, and take one-fifteenth of this sum as the share of each child in the testator's estate. From the share of the unmarried daughter will be deducted $1,202.16, and from the share of each of the nine daughters shown to have received advancements of $400 the advancement will be deducted. The residuary sums thus found will be added to the full shares of the

two daughters who received no advancements. The sum of the additions will be the value of the allotment to be made to the daughters, and the sum of the full shares of the four sons will constitute the value of the allotment to them. And the land will be partitioned into two shares accordingly.

The costs of this cause, and of this partition, and of the consequent decrees, will be paid by the sons on the one hand and the daughters on the other, and the representatives of each, in the proportion of their interest in the land as fixed by the commissioners.

The complainants are entitled to have their respective shares settled in the land as between themselves, and to a partition, or sale for partition, of their allotment, the costs of such sale or partition to be borne exclusively by them.